# EXHIBIT B

**As Gonno Lease**

*LA 9C-145*

FILE NO. 90-370

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
SAIPAN, MARIANA ISLANDS

**LEASE AGREEMENT**

This Lease Agreement, made this **21st** day of **September**, 1990, on Saipan, Mariana Islands, by and between the MARIANAS PUBLIC LAND CORPORATION, its successors and assigns, hereinafter called the "Corporation", whose offices are located at Capitol Hill, Saipan, Mariana Islands, and MICRONESIAN TELECOMMUNICATIONS CORPORATION, its successors and assigns, hereinafter called "Lessee".

The parties agree as follows:

ARTICLE 1.    GRANT OF PREMISES

The Corporation leases to the Lessee the described real property known as Lot No. 021 K 01, located in As-Gonno, Saipan, Commonwealth of the Northern Mariana Islands, containing an area of 929 square meters, more or less, as shown on Drawing/ Cadastral Plat No. 021 K 00, Commonwealth Recorder's File No. 90-3720, approved September 18, 1990, attached as Exhibit "A" which is incorporated herein and made part hereof by reference, together with all existing improvements thereon and appurtenances thereto, herein called the "Premises".

ARTICLE 2.    PURPOSE

The property shall be used, except with the written consent of the Corporation, only for the purpose of constructing, operating, and maintaining facilities for the exchange, switching

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

and  transmission of telecommunication as well as a base yard for the storage of supplies, vehicles and maintenance equipment.

ARTICLE 3.    TERM

The term of this Lease shall be for a period of twenty-five (25) years  unless  otherwise  terminated pursuant to applicable provisions  of  this  Lease.    The leasehold term shall commence on the first day of the month on which the Lease is executed.

ARTICLE 4.    GRANT TO EXTEND

The  Corporation  grants  the Lessee  an  extension of this Lease for one (1) additional term of  fifteen (15) years subject to  all  of  the   terms  and   provisions  set  forth  in  this Lease; provided,  however,  that  this  extension  for  an addi-tional    fifteen    (15)    years    shall  be subject to  the approval  by  the  Northern   Marianas  Commonwealth  Legislature as    provided  for  under   Article    XI, Section (c) of the Constitution  of  the  Northern Mariana Islands.

ARTICLE 5.    RENTAL

The Lessee, in consideration of the foregoing, covenants and agrees to pay to the Corporation, in the manner prescribed herein in  lawful money of the United States,  annually as rent for  the Premises leased hereby the following rentals:

A.    GUARANTEED ANNUAL RENTAL

| PERIOD | AMOUNT |
| --- | --- |
| 1st Five Year Period | $3,680.33 |
| 2nd Five Year Period | $3,974.75 |

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

- 2 -

|  | 3rd Five Year Period | $4,292.73 |
|---|---|---|
| 1 | 4th Five Year Period | $4,636.15 |
| 2 | 5th Five Year Period | $5,007.04 |

3    The above annual rental shall be paid quarterly in advance.

4    B.  <u>Gross Receipt Rental</u>.  In addition to the guaranteed

5   minimum annual rental provided for above, the Lessee shall pay

6   to Corporation in the manner prescribed herein any surplus

7   resulting from subtracting the minimum annual rental from three

8   percentage (3%) of the gross receipts and as further defined in

9   Article 35 H hereof.

10    This additional amount, if any, shall be paid quarterly,

11   within forty-five (45) days from the end of the quarter, with

12   adjustments, if any, to be made at the end of every calendar year

13   upon the submission of the annual certified financial statements

14   as provided in Article 8 hereof.  A copy of the CNMI Business

15   Gross Revenue Tax Quarterly Return must be submitted quarterly

16   together with the computation of the quarterly gross receipts

17   rental to substantiate the additional payment or non-payment.

18    C.  <u>Manner of Payment</u>.  The Lessee shall discharge its

19   obligation of payment under this Article by depositing the

20   payments required under this Article with the Marianas Public

21   Land Corporation Office, located at Capitol Hill, Saipan,

22   Mariana Islands, or in such manner as the Corporation may from

23   time to time designate in writing.

24    D.  <u>Time and Payment; Interest</u>.  All rents payable pursuant

25   to the terms of this Lease Agreement shall be deemed to have

26   commenced from the first day of the month of execution of this

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

- 3 -

Lease and shall be paid without prior notice or demand.  Past due
rental shall bear interest at one percent (1%) per month
compounded  monthly, from the date it becomes due until paid.
This provision shall not be construed to relieve the Lessee from
any default in making any rental payment at the time and in the
manner herein specified.

**ARTICLE 6.    APPRAISAL AND DETERMINATION OF RENTAL AFTER EACH
                TEN YEARS**

Notwithstanding the provision under Article 5A, at the end of
each ten (10) year period of this Lease Agreement or renewal or
extension thereof, the guaranteed annual rental payable by the
Lessee to the Corporation for the next two five-year period shall
be based upon eight (8%) percent of the appraised fair market
value of the unimproved land or as provided for under Article 5A
whichever is greater utilizing the land residual method of
appraisal.

The appraised market value will be determined by an
independent appraiser who must be a member of a nationally
accepted appraisal society, to be selected by the agreement
between the Corporation and the Lessee.  In the event that the
Corporation and the Lessee cannot reach an agreement on the
selection of the appraiser, the appraiser will be selected by
the Chief Justice or Associate Justice of the Commonwealth
Supreme Court.  The cost of the appraisal will be borne by the
Lessee.

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

- 4 -

ARTICLE 7.    ANNUAL REPORTS AND AUDIT

The Lessee shall, not later than forty-five (45) days after the end of each calendar year of this Lease Agreement, submit to the Corporation U.S. CPA audited financial statements to include a schedule of gross receipts indicating sources and deductions in support of the gross receipts rental requirement under Article 6B.  Any duly authorized representative of the Corporation shall have access to and the right to examine and audit any or all pertinent books, documents, papers and records of the Lessee and its sublessee and concessionaires relating to this Lease Agreement during the normal business hours of any working days.  Lessee shall insert a similar provision in all subleases pertaining to this right of access, examination, and audit and shall make available to said representative(s) or agent(s) all books and records of the Lessee or its sublessees and concessionaires which may be requested or may be necessary for completion of a special audit of any or all activities or enterprises conducted on the Premises.

The Lessee shall keep and maintain its accounting and bookkeeping system in accordance with generally accepted accounting principles applicable to the industry.  The Lessee shall keep its accounting books and records at all times in the English language.

ARTICLE 8.    PERMITS, CONSTRUCTION PLANS, AND SPECIFICATIONS

A.    <u>Permits</u>.  The Lessee agrees and covenants that within three (3) months from commencement of this Lease Agreement, it will at its own expense and risks secure all required CNMI

- 5 -

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

Government  and applicable federal permits.

B.  Construction  Plans  and  Specifications.  The Lessee
agrees and covenants that within six (6) months from commencement
of  this  Lease Agreement,  it will submit  complete construction
plans  and    specifications for construction  of  facilities and
structures  authorized  under Article.    Upon  submittal  by the
Lessee,  the  Corporation has fifteen (15) working days to review
the  submitted    construction plans  and  specifications  and to
notify  the  Lessee of approval or disapproval of  the  submitted
plans.    In the event that changes are necessary, the Corporation
shall  give the Lessee reasonable time to make necessary  changes
to  the  plans  for  resubmittal  to  the  Corporation.    If the
Corporation  does not notify the Lessee in writing of the  status
of the submitted plans within the thirty (30) working days review
period,  then  the submitted plans and specifications are  deemed
approved.

ARTICLE 9.  CONSTRUCTION SCHEDULE

The Lessee agrees and covenants that within seven (7) months
from commencement date of this lease agreement, it will at is own
cost,  risk and expense,  commence construction of facilities and
improvements  in  accordance with the approved plans as  required
under Article 8B and  will diligently pursue its construction and
said  construction  must be completed no later than  twenty  four
(24)  months  from the commencement date of the  Lease Agreement
subject  to  excused delay of performance as provided in . Article
10.

ARTICLE 10.   EXCUSED DELAY OF PERFORMANCE

1    Whenever under this Lease Agreement a time is stated within
2  which or by which original construction,  repairs, reconstruction
3  or  other  performance  by the Lessee shall be  commenced  or  be
4  completed,  and  a  failure or delay in such performance is  due,
5  in  whole or in part,  to fire,   explosion,  earthquake,  storm,
6  flood,  drought  or  other unusually severe  weather  conditions,
7  accident,  breakdown of machinery or facilities, strike, lockout,
8  combination of workmen,  war,  insurrection, riot, act of God or
9  the public enemy, or any contingency or delay or failure or cause
10  of  any  nature beyond the reasonable control  of  either party,
11  whether  or not of the kind hereinbefore specified and whether or
12  not any such  contingency is presently occurring or occurs in the
13  future, and  such failure or delay does not result from the fault
14  or negligence  of the Lessee, the period of delay so caused shall
15  be added to the  period allowed herein for the completion of such
16  work provided,  however,  the Lessee shall notify the Corporation
17  in writing within thirty (30) days after the occurrence of any of
18  the above events.

19
20  ARTICLE 11.   CONSTRUCTION, MAINTENANCE, REPAIR, ALTERATION

21    All improvements placed on the Premises shall be constructed
22  in  good and workmanlike manner and in compliance with applicable
23  laws,  regulations, ordinances, and building codes.  All portions
24  of  buildings  located  upon the Premises  exposed  to  perimeter
25  properties  or  to  the  public view  shall  present  a  pleasant
26  appearance  and  all service areas shall be screened from  public

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

- 7 -

view.    The Lessee shall,  at all times during the term  of this
Lease  Agreement  and  at  the Lessee's sole  cost  and  expense,
maintain the  Premises and all improvements thereon in good order
and  repair  and  in a neat,  sanitary and  attractive condition.
Unless  the  same are  to be promptly replaced  with improvements
having  at  least  an equal value,  no removal or  demolition  of
improvements  have  a  value in excess of $25,000.00  shall  take
place without the prior written  consent of the  Corporation.  No
additions  having  a  value  in excess  of  $25,000.00  shall  be
constructed  on the Premises without the prior written consent of
the   Corporation.      The  consent  may  be  conditioned  by the
Corporation upon an amendment to Article 5 and the other terms of
the  Lease.     The Lessee shall indemnify and  hold  harmless the
Corporation  against  liability for all claims arising  from  the
Lessee's  failure  to maintain the Premises and the  improvements
situated  thereon as hereinabove provided,  or from the  Lessee's
violation  of  any  law,  ordinance,  or  regulation applicable
thereto.

ARTICLE 12.  SUBLEASE, ASSIGNMENT, TRANSFER, CONCESSIONS

(a)   Except with  the  prior  consent   in writing of the
Corporation in each instance,  Lessee shall not,  with respect to
development on the public land leased hereby:

(1)   assign, sublease or transfer all or any
part of the Lessee's interest in or to the
Premises, or permit the Premises to be used
or occupied by others, or

(2)   enter into a management contract or other

- 8 -

<div style="margin-left:auto; text-align:left;">

arrangement by which the Premises shall be managed and operated by anyone other than Lessee, or

(3) grant concessions, permits, or otherwise contract for or permit any business or commercial enterprise or activities to be constructed or performed on the Premises by any person other than the Lessee.

</div>

In addition, this lease shall not be assigned or transferred by operation of law. In no event shall Lessee assign or otherwise transfer this lease within five (5) years from the date of its execution.

The consent by the Corporation to an assignment, transfer, management contract, use, occupancy, permit, or subletting may be granted, denied or made subject to such conditions as the Corporation finds to be in the best interest of its beneficiaries. No sublease, assignment, transfer, concession, permit, or contract shall be valid without the approval of the Corporation, and then only if the respective sublessee, assignee, transferee, concessionaire, permittee, or other contracting party agrees in writing that the provisions of this lease bind such sublessee, assignee, transferee, concessionaire, permittee, or contracting party.

Once given, the Corporation's consent shall not relieve Lessee in any way from obtaining the prior consent in writing of the Corporation to any further assignment, transfer, management contract, use, occupancy, or subletting.

<div style="text-align:left; font-weight:bold; writing-mode: vertical-lr;">
MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950
</div>

For purposes of this section, "Premises" includes any portion of the leased Premises or any improvement on the leased Premises, and "Lessee" includes Lessee's employees, successors, and assigns.

(b)    If the sale, assignment, transfer, use, or other disposition of any of the issued and outstanding capital stock of Lessee (or of any successor or assignee of Lessee which is a corporation), or of the interest of any general partner in a partnership owning the leasehold estate created hereby, or of the interest of any member of a joint venture, syndicate, or other group which may collectively own such leasehold estate, shall result in changing the control of Lessee or such other corporation, partnership, joint venture, syndicate, or other group, then such sale, assignment, transfer, use, or other disposition shall be deemed an assignment of this lease and shall be subject to all the provisions of this lease with respect to assignments.

For the purposes of this Section, "control" of any corporation shall be deemed to be vested in the person or persons owing more than fifty percent (50%) of the voting power for the election of the Board of Directors of such corporation and "control" of a partnership, joint venture, syndicate, or other group shall be deemed to be vested in the person or persons owing more than fifty percent (50%) of the general partner's interest in such partnership or of the total interest in such joint venture, syndicate, or other group. For purposes of determining control by a person, members of the family of an

- 10 -

assignor  or transferor shall be included.    For purposes of this
section,  "members  of  the  family" include  a  person's  spouse,
grandparents,  parents,  brothers and sisters, nephews and nieces,
and  children by adoption and by blood.    Lessee shall furnish an
annual  statement to the Corporation that includes the names  and
addresses  of  all  stockholders in any  corporation  or  general
partners  in  any partnership holding this  lease,  showing  the
number  of  shares of stock owned by each  stockholder of  such
corporation,  or  the respective interest of the partners in such
partnership,  as the case may be.  Such statement shall be signed
under  oath  by an officer of each corporation and by  a  general
partner of each partnership holding this lease.

(c)  No assignment made with Corporation's consent shall be
effective  until  there shall have been delivered to  Corporation
an  executed  counterpart  of  such  assignment  containing  an
agreement,  in recordable form,  executed by the assignor and the
proposed assignee, in which the assignee assumes dues performance
of  the obligations on the assignor's part to be performed  under
this lease to the end of the leasehold term.

(d)  If the  Corporation consents to an assignment, it shall
assess  a  fee  of  five  percent  (5%) of    the  capital gain
attributable  to  the leased land.   The term  "capital  gain" is
defined  as  the  sale  amount less the book  value  of  all  the
improvements  and fixtures.   Lessee shall pay the fee at closing
of the assignment.

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

- 11 -

ARTICLE 13.  STATUS OF SUBLEASES

Termination of this Lease Agreement, in whole or in part, by cancellation or otherwise, shall not serve to terminate subleases, concessions, or subtenancies, but shall operate as an assignment to the Corporation of any and all such sublease concessions, and subtenancies.

ARTICLE 14.  AGREEMENTS FOR UTILITY LINES

The Lessee shall have the right to enter into agreement with public utility companies or with the Government of the Commonwealth of the Northern Mariana Islands and/or any of its agencies to provide utility services, including water, electricity, telephone, television, and sewer line necessary to the full enjoyment of the Premises and the development thereof in accordance with the provisions of this Lease Agreement.  Subject to prior consultation with Lessee, the Corporation reserves the authority to grant utility rights of way across the Premises. The Lessee shall furnish to the Corporation executed copies thereof together with a plat or diagram showing the true location of the utility lines to be constructed in accordance therewith.

ARTICLE 15.  RIGHTS-OF-WAY FOR UTILITY LINES

The Corporation hereby agrees to grant rights-of-way on, or across public lands for utility lines necessary to the full enjoyment of the Premises and the full development thereof. Such rights-of-way are to be granted by the Corporation in accordance with the approved general development and construction plans.

ARTICLE 16.   RIGHT OF MORTGAGE

1   The Lessee,  its successors  and assigns may, subject to the

2   express prior written approval of the Corporation,  mortgage this

3   Lease  Agreement  and the Lessee's interest  hereunder,  provided

4   that  no  holder of any mortgage of this Lease Agreement  or  the

5   Lessee's interest hereunder,  or any one claiming by,  through or

6   under  any  such mortgage shall,  by virtue  thereof,  except  as

7   provided  in  Article  16  hereof,  acquire  any  greater  rights

8   hereunder  than  the  Lessee,  and  no  mortgage  of  this  Lease

9   Agreement  or  the Lessee's interest hereunder,  in whole  or  in

10  part,  by  the Lessee or the Lessee's successors or assigns shall

11  be  valid,  unless:   (i)  at  the time of  the  making  of such

12  mortgage,  there shall be no default under any of the agreements,

13  terms,  covenants  and  conditions to be performed by the  Lessee

14  under this lease;  (ii) such mortgage shall be subject to all the

15  agreements,  terms,  covenants  and  conditions  of  this  Lease

16  Agreement,   (iii)  any  such  mortgage  shall  reserve  to the

17  Corporation  prior right,  in the event of Lessee's default under

18  the  same and after notice of the same character and duration  as

19  required  to  be given to Lessee,  to correct the default  or  to

20  purchase  the same and terminate this Lease Agreement;  and  (iv)

21  such mortgage shall contain the following provisions:

22       "This instrument is executed upon condition that (unless

23       this condition be released or waived by the Corporation

24       or its successors in interest by an instrument in

25       writing) no purchaser or transferee of said Lease

26       Agreement at any foreclosure sale hereunder, or other

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

- 13 -

transfer authorized by law by reason of a default
hereunder where no foreclosure sale is required, shall,
as a result of such sale or transfer, acquire any right,
title or interest in or to said Lease Agreement or the
leasehold estate hereby mortgaged unless (i) the
Corporation shall receive written notice of such sale or
transfer of said Lease Agreement within fifteen (15) days
after the effective date of such sale or transfer and
(ii) a duplicate original copy of the instrument or
instruments used to effect such sale or transfer shall
be delivered to the Corporation within thirty (30) days
after the execution and delivery thereof."

Any  mortgage entered into  shall be  strict compliance with
all applicable laws and regulations,  including mortgage security
instrument  laws,  or  applicable constitutional  provisions,  in
order to be valid and enforceable.

ARTICLE 17.   RIGHTS OF LEASEHOLD MORTGAGEES

If the Lessee or  the Lessee's successors or assigns shall
mortgage  this  Lease Agreement or its interest in the  Premises,
in  accordance with the provisions of this Lease Agreement,  then
so long as any such leasehold mortgage,  as hereinafter  defined,
shall   remain unsatisfied of record,  the  following provisions
shall apply:

A.   <u>Notice  to Mortgagee</u>.  The Corporation shall serve upon
the   Lessee any notice of default pursuant to the  provisions of
Article   23 or any other notice under the provisions of  or with

- 14 -

respect  to  this Lease Agreement.   The Lessee  shall thereafter serve  a copy of such notice upon the holder of the then existing mortgage  of this  Lease Agreement or the  Premises.   Service of such notice of default upon the Lessee shall be deemed as service on  the  mortgagee who  shall thereafter have the same  period as the  Lessee  for remedying the default or causing the same to  be remedied,  as  is  given the Lessee after service of such  notice upon it.

B.  Remedy.  Such leasehold mortgagee of this Lease Agreement or  the  Premises,  in case  the  Lessee  shall be  in  default hereunder,  shall,  within  the  period and otherwise as  herein provided,  have  the right to remedy such default,  or cause  the same  to  be  remedied,  and  the Corporation  shall  accept such performance  by or at the instigation of such leasehold mortgagee as if the same had been performed by the Lessee.

C.  Diligent Prosecution.  No default on the part  of Lessee in  the performance work required to be performed,  or acts to be done,  or conditions to be remedied, shall be deemed to exist, if steps  shall,  in  good faith,  have been commenced  promptly to rectify  the  same  and shall be prosecuted  to  completion  with diligence  and  continuity in accordance  with  Article 23, on "Default", unless otherwise specified in this Lease Agreement.

D.  Termination.  Anything herein contained notwithstanding while  such leasehold mortgage remains unsatisfied of record,  if any  event  or  events  shall  occur  which  shall  entitle  the Corporation  to  terminate this Lease Agreement, and if before the expiration  of  ninety (90) days after the date  of  service of

- 15 -

notice  of  termination   by the Corporation all  rent  and other

payments  herein provided for then in default is fully paid,  and

shall  have complied or shall be engaged in the work of complying

with all the other requirements of this Lease Agreement,  if any,

then in default, then in such  event the Corporation shall not be

entitled  to  terminate  this Lease Agreement and any  notice  of

termination  theretofore given shall be  void and of no  force or

effect,  provided, however, nothing herein contained shall in any

way  affect,  diminish  or  impair the right  of  Corporation  to

terminate this Lease Agreement or to enforce any other subsequent

default  in  the  performance of any of the  obligations  of  the

Lessee hereunder.

E.  **Notice of Termination.**  In the event of the termination

of  this  Lease Agreement prior to the natural expiration of  the

term  hereof,  whether  by  summary  proceedings  to  dispossess,

service  of notice to terminate or otherwise,  due to default  of

the Lessee as provided in Article 20 hereof, or any other default

of  the Lessee,  the Corporation shall serve upon the  holder of

the  then  existing   mortgage on this  Lease  Agreement  or  the

Premises  written  notice of such  termination.   Nothing herein

contained  shall  release the Lessee from any of its  obligations

under  this Lease Agreement which may not have been discharged or

fully  performed  by any mortgage of this Lease Agreement or  the

Premises, or its designee.

F.  **First Mortgage Only.**  Whenever reference is made herein

to  the  holder  of the mortgage on this Lease Agreement  or  the

Premises, the same shall be deemed to refer only to the holder of

the first mortgage on this Lease Agreement or the Premises, if any, as shown by last notice by registered mail given to the Corporation. Any notice or other communication to any such holder or mortgage shall be in writing and shall be served either personally or by certified or registered airmail addressed to such holder or mortgagee at his address appearing on such records or at such other address as may have been designated by notice in writing from such holder or mortgagee to the party serving such notice of communications. Nothing contained in this Article shall be construed so as to require the Corporation to serve notices upon or recognize any leasehold mortgagees other than the holder of such first mortgage on this Lease Agreement or the Premises, as aforesaid.

ARTICLE 18.   FIRE AND DAMAGE INSURANCE

The Lessee shall, from the effective date of this Lease Agreement, carry fire and damage insurance with extended coverage endorsements, jointly in the names of the Lessee and the Corporation, covering the full insurable value of all permanent improvements on the Premises, subject to appropriate co-insurance provisions. The policy shall contain a clause requiring that the Corporation be given thirty (30) days notice prior to any cancellation or termination of the policy. A copy of such policy or policies or an acceptable certificate shall be deposited with the Corporation within thirty (30) days of the same obtained by the Lessee. The Lessee shall pay all premiums and other charges payable in connection with insurance carried by the Lessee.

- 17 -

In the event of damage to any permanent improvement on the Premises, the Lessee shall reconstruct such improvement in compliance with applicable laws, ordinances, and regulations and in accordance with the applicable provisions of this Lease Agreement. Such reconstruction shall commence within six (6) months after the damage occurs and shall be pursued diligently and completed within one (1) year of the occurrence.

In the event of damage to the extent of seventy-five percent (75%) or more of the total value of all permanent improvements on the Premises during the last five (5) years of the term of this Lease Agreement, the Lessee for ninety (90) days shall have the option to agree to reconstruct the damaged improvement(s). Should the Lessee fail to notify the Corporation in writing of the exercise of its option to reconstruct within ninety (90) days of the occurrence of damage, the Premises shall be cleared at the Lessee's expense and upon completion of such clearing this Lease shall terminate. In the event Lessee shall elect not to rebuild damaged improvements during the last five year term of the lease, all insurance proceeds accruing as a result of the fire or damage, it is jointly agreed hereto, shall be for the sole benefit of and made payable to the Corporation, or its lawful successors and assigns. Any damages incurred or suffered by any sublessee, assignee, mortgagee or otherwise as a result of such termination shall be borne solely by the Lessee.

ARTICLE 19.  NOTICES

All notices shall be made by personal delivery or

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

by registered or certified mail,  addressed to the property party
as follows:

| | |
|---|---|
| CORPORATION: | P. O. Box 380<br>Saipan, MP  96950 |
| LESSEE: | P. O. Box 306<br>Saipan,  MP  96950 |

All  notices  to  the  Lessee  or  the  Corporation  shall be
deemed  delivered  as  of the date of  the  post mark of  any  mail
notices properly addressed and registered by the U.S. Post Office
provided that such notice and mail is properly  addressed, as set
forth  above,  contains  sufficient  postage  and  is  registered.

ARTICLE 20.   LIABILITY INSURANCE

Lessee covenants and agrees  to save and keep harmless the
Corporation against all liabilities, damages and claims to person
or  property,  and  in  connection therewith,  Lessee  agrees  to
procure  and maintain in force during the term of this Lease  and
any  extension  thereof,  at  its  expense,  public  liability
insurance,  in   companies  authorized  to  do  business  in the
Northern  Mariana  Islands,  in a minimum amount of $100,000  for
each person injured,  $300,000 for any one accident, and $300,000
for property damage or such higher amounts as the Corporation may
reasonably  require.   Copies of such policies shall be delivered
to  the  Corporation and shall contain a clause stating  that  at
least  thirty (30) days  notice shall be given to the Corporation
prior  to  cancellation or  refusal to renew  any  such  policies.
Lessee  agrees  that if such insurance policies are not  kept  in
force during the entire term of  this Lease,  the Corporation may
procure the necessary insurance,  pay the premium therefore,  and

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

such premium shall be repaid to the  Corporation immediately upon the Corporation's demand.

ARTICLE 21.  CONDEMNATION

The Corporation and Lessee  covenant and agree that in the event  the  whole  property  hereby  leased  shall  be  taken in condemnation proceedings or by any right of eminent domain, or otherwise,  for public purposes, then and on the happening of any such event,  the Corporation or Lessee,  may terminate this Lease and  the  term  hereby granted and all the rights of  the  Lessee hereunder,   and  the rent shall be paid up to the date  of such condemnation or   termination and any  unearned  rent  paid in advance  by the Lessee shall be refunded prorata.   In  the event any  portion of the property hereby leased is condemned or  taken by  right  of  eminent domain or otherwise for  public  purposes, thereby rendering the leased property unsuitable for the purposes of  Lessee  as  stated  in  Article  2  above,  then  and  on  the happening  of such event Lessee may terminate this Lease and  the term  hereby  granted and all the rights of the Lessee  hereunder and  the rent shall be paid up to the date of such termination or condemnation and any unearned rent paid in  advance by the Lessee shall  be  refunded prorata.   If Lessee does not  terminate this Lease  upon  such  event,  then  the rent  shall  be  reduced  in proportion  of the land taken as such bears to the total area  of land    leased.    The  Corporation  and  the  Lessee may each  independently file separate claims in such proceedings  for the  purpose  of having the value of their  respective  interests

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

determined, and the award shall be paid accordingly; but if the public or governmental authorities shall object or refuse to permit separate claims to be proved and/or distributed said award in such manner, the Corporation will prosecute all claims for damages to the Premises on behalf of both the Corporation and the Lessee (and authority to do so is hereby granted), and after deducting all reasonable expenses incurred by the Corporation incident thereto, the balance of said award shall be divided between the Corporation and the Lessee prorata in proportion to their respective interests as established in that proceedings. In the event the Corporation prosecutes the claim on behalf of both parties hereto, all such awards shall be paid to the Corporation for the account of the Corporation and Lessee as hereinbefore provided.

ARTICLE 22.   ABANDONMENT OF PREMISES

Should the Lessee fail to use the Premises for the purpose set forth in this Lease Agreement for a consecutive period of ninety (90) days without securing the written consent of the Corporation, the Lessee shall be deemed to have abandoned the Premises, so that in such event this Lease Agreement may, at the option of the Corporation, be terminated pursuant to the provisions of Article 20 hereof without further notice to the Lessee.

ARTICLE 23.   DEFAULT

Time is of the essence and Lessee shall automatically be in default of this Lease if:

A.   Lessee shall fail to pay any installment or rent hereby required to be paid by Lessee within thirty (30) days after the due date under the terms of this Lease.

B.   Lessee shall breach any term, provision or covenant of Lease, other than the payment of rent, taxes, or other charges, and fails to commence the removal or curing of such breach within thirty (30) days from and after written notice from the Corporation.

C.   Lessee shall become insolvent or adjudicated bankrupt.

D.   Lessee abandons the Premises as provided in Article 22.

Any notices, as may be required by law or this Lease, shall be delivered as provided by Article 19 of this Lease.

ARTICLE 24.   REMEDIES

Upon the occurrence of any event of default specified in Article 23, the Corporation may terminate this Lease and may, upon fifteen (15) days written notice, enter in, into and upon the leased premises and take possession of all buildings, fixtures and improvements, and evict Lessee without liability of trespass.   The remedies herein shall not prejudice the Corporation's other rights and remedies at law or equity.

ARTICLE 25.   OPTION TO TERMINATE

In the event that the Lessee shall at any time be prevented from utilizing the property for the purposes herein stated for any reasons beyond the reasonable control of Lessee, such as but not limited to, the failure of Lessee to receive the necessary government licenses and permits required for earth clearing

- 22 -

and   construction   or   by   action by   any   government   agency   or
judical decree preventing Lessee from utilizing the property for
the intended purpose,   then and in such event,   Lessee shall have
the     option to terminate this Lease Agreement upon   ninety (90)
days written notice to the Corporation.

ARTICLE 26.   ACCORD AND SATISFACTION

No payment by Lessee   or   receipt by the Corporation of a
lesser   amount   than the annual rent herein stipulated   shall   be
deemed   to  be other than on account of rents due,   nor shall any
endorsement   or statement on any check or any letter accompanying
any   check   or   payment   of   rent   be   deemed   an   accord   and
satisfaction,   and   the     Corporation may accept   such   check or
payment  without prejudice to  the Corporation's right to recover
the  balance of such rent or pursue any other remedy provided  in
this Lease.   In the event that the rent or any other monies which
are due hereunder by Lessee are delinquent,   the Corporation may,
upon  the receipt of any payments,   apply them to any account or
period it shall determine in its discretion.

ARTICLE 27.   WAIVER OF BREACH

Waiver   by   the   Corporation   of any breach of any term,
covenant   or condition herein contained shall not be deemed to be
a  waiver of any subsequent breach of the same or any other term,
covenant   or condition herein contained.     The acceptance of rent
by   the   Corporation shall not be deemed to be a waiver of any of
the   terms   or conditions including the remedies   of   Corporation
hereof.     No   covenant herein shall be deemed to be waived by the

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

- 23 -

Corporation unless such waiver be in writing by the Corporation.

ARTICLE 28.   EXPENSE OF ENFORCEMENT

If action be brought by the Corporation for rent or any othe sums of money due under this Lease Agreement, or if any action be brought by either the Corporation or Lessee to enforce performance of any of the covenants and/or conditions of this Lease Agreement, the losing and defaulting party shall pay reasonable attorney's fees to be fixed by the Court as a part of the costs in any action.

ARTICLE 29.   INDEMNITY

Lessee will hold the Corporation harmless from any claim or demand by third persons for damage, including claims for property damage, personal injury or wrongful death, arising out of any accident on or about the demised premises, or occasioned by any nuisance made or suffered on the Premises, or by any fire or explosion thereon, or caused by any failure on the part of the Lessee to maintain the Premises in a safe condition. All property, chattels, fixtures, furnishing, etc., which may belong to the Lessee or to third parties, shall be maintained on the property at the sole risk of the Lessee and the terms and conditions of this indemnity clause shall be applicable hereto and shall hold the Corporation harmless, as set forth herein.

ARTICLE 30.   COVENANT AND ENJOYMENT

The Corporation covenants that the Lessee, upon paying the rent required herein and upon fulfilling all the conditions and agreements, required of the Lessee, shall and may lawfully,

- 24 -

peacefully and quietly have, and hold, use, occupy and possess
and enjoy the property during the term agreed upon without any
suit, hindrance, eviction, ejection, molestation, or
interruption whatsoever of or by the Corporation, or by any other
person lawfully claiming by, from, under or against the
Corporation.

ARTICLE 31.   UNLAWFUL USE AND COMPLIANCE WITH LAWS

The Lessee covenants and agrees not to use or cause or
permit be used any part of the Premises for any unlawful conduct
or purpose. Lessee agrees to comply with all property, building,
health, sanitation, safety and other laws and regulations of the
Commonwealth of the Northern Mariana Islands, which are in
effect or which may hereafter become effective.

ARTICLE 32.   "HOLD OVER" CLAUSE

If the Lessee shall remain in possession after the expiratio
of the term of this Lease Agreement or the extension thereof, the
Lessee shall be a tenant on a month-to-month basis and there
shall be no renewal of this Lease Agreement by operation of law
or otherwise.

ARTICLE 33.   CONDITION OF PREMISES

The Lessee acknowledges that it has examined the Premises
prior to the making of this Lease Agreement and knows
the conditions thereof and that no representation other than
those expressed herein have been made by the Corporation, and
the Lessee hereby accepts the Premises in their present condition

- 25 -

at the date  of execution of this Lease Agreement.

ARTICLE 34.  PUBLIC AUDITOR

The Lease Agreement is subject  to 1 CMC Section 7845.  The Lessee,  its sublessees,  successors, and assigns, shall provide, upon  request,  all records and reports,  and shall allow  audit, inspection,     and     access     to     its     books,     records, documents, correspondence,  and  any  other  data  and  material relating  to this Lease Agreement,  to the Public Auditor of  the Commonwealth  of  the  Northern Mariana Islands.     This right of access   and   inspections   shall continue until the  expiration of three  (3) years after the  final rental payment under  the Lease is made.

ARTICLE 35.  GENERAL PROVISIONS AND DEFINITIONS

A.   <u>Waiver</u>.   No waiver of any default of the Lessee hereunder  shall be implied from any omission by the  Corporation to  take  any action on account of such default if  such  default persists  or is repeated,  and no express waiver shall affect the default  other than the default specified in the express  waiver, and that only for the time and to the extent therein stated.   One or more waivers of any  covenant, term or condition of this Lease Agreement  by the Corporation shall not be construed as a  waiver of any subsequent breach of the same covenant, term or condition. The  consent  or approval by the Corporation to or of any act  by the  Lessee requiring the Corporation's consent or approval shall not  be deemed  to waiver or render unnecessary the Corporation's consent  or  approval to or of any subsequent or similar acts  by

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

- 26 -

the Lessee.

B. **Agreement Complete**.    It is hereby expressly agreed that this Lease Agreement together with the exhibits attached hereto contains all of the terms, covenants, conditions and agreements between the parties hereto relating in any manner to the use and occupancy of the Premises, and that the execution hereof has not been induced by either of the parties by representations, promises or understandings not expressed herein and that there are no collateral agreements, stipulations, promises or understandings of any nature whatsoever between the parties hereto relating in any manner to the use and occupancy of the Premises and none shall be valid or of any force or effect, and that the terms, covenants, conditions and provisions of this Lease Agreement cannot be altered, changed, modified or added to except in writing signed by the parties hereto.

C. **Interpretation**.    The language in all parts of this shall be in all cases construed simply, according to its fair meaning, and not strictly for or against the Corporation or the Lessee. Captions and paragraph headings contained herein are for convenience and reference only, and shall not be deemed to limit or in any manner restrict the contents of the paragraph to which they relate.

D. **Concessionaire**.    For the purpose of this Lease Agreement, any concessionaire of the Lessee shall be deemed to be a sublessee, and all of the provisions of this Lease Agreement applicable to sublessees and subleases shall be equally applicable to the granting of any concession and to

- 27 -

concessionaires with the same force and effect as though specially provided therein.

E.  <u>Government Representative</u>.  The authorized representative of the Corporation for the purpose of this Lease Agreement shall be the Executive Director or such other person as the Executive Director may designate in writing.

F.  <u>Companies Bonding and Insuring</u>.  All corporate surety bonds provided by the Lessee in compliance with this Lease Agreement shall be furnished by companies holding certificates of authority from the Secretary of the Treasury of the United States of America as acceptable sureties on Federal bonds.  All insurance obtained by the Lessee in compliance with this Lease Agreement shall be obtained from reputable companies acceptable to the Corporation.

G.  <u>Law Governing</u>.  This Lease Agreement shall be governed by the laws of the Commonwealth of the Northern Mariana Islands, both as to the interpretation and performance.

H.  <u>Gross Receipts</u>.  "Gross Receipts", as that term is used herein means all income or revenue whatsoever, including money and any other thing of value, received by or paid to the Lessee, its sublessees or concessionaires, or received by or paid to others for the use and benefit of any of the aforementioned, derived from business done, sales made or services rendered directly from or on the Premises, or derived from the subleasing, subrenting, permitting, contracting, or other use of the Premises or any portion thereof.  The Lessee shall not directly, or indirectly, divert from inclusion in Gross Receipts

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

any  income  or revenue whatsoever from the Premises or from  any business  conducted thereon,  to any other business or enterprise located elsewhere.   The following items may be deducted from the gross receipts:

1) credits for the exchange of goods or merchandise from the Premises to another store or stores owned or operated by the Lessee, its parent or affiliate, where such exchange is made solely for the convenience of business and not for the purpose of consummating a sale previously made directly or indirectly from or upon the Premises;

2) to the extent the same shall have been included in "Gross Receipts", there shall be deducted credits to customers for returned merchandise, merchandise trade-ins, exchanges, merchandise cancellations, allowances and discounts, and any and all credits to customers of a similar nature;

3) the amount derived from the sale or other disposition of fixtures, goodwill, improvements, furnishings, equipment, accessory, appliance, utensils or any other item of property:  (i) which is either sold outside the ordinary course of the Lessee's business; or (ii) which is not acquired or held by the Lessee as a stock-in-trade or inventory for resale in the ordinary course of the Lessee's business;

4) to the extent the same has been counted in the "Gross Receipts", there shall be deducted an amount

- 29 -

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

equal to all income or revenue accruing or paid to
the Lessee or for its benefit which is derived from
the rental, leasing, or grant of facilities on the
Premises to any sublessee or concessionaire primarily
for the purpose of operating on the Premises a retail
or wholesale sales or service facility whose income
or revenue is counted as part of the "Gross Receipts"
of this Lease Agreement.

ARTICLE 36.   LEASE AGREEMENT BINDING

     This  Lease  Agreement and the covenants, conditions and
restrictions   hereof   shall   extend  to  and  be   binding   upon   the
parties   hereto,   their  heirs,   successors  and  assigns  and  to  any
other   person    claiming  to  hold  or  to  exercise  any   interest  by,
under  or  through   any  of  the  parties  hereto.

     IN  WITNESS  WHEREOF,  the  parties  have  executed  the  Agreement
on  the  date  first  written  above.

MARIANAS PUBLIC LAND              MICRONESIAN TELECOMMUNICATIONS
   CORPORATION                       CORPORATION


By: _____    By: _____
    MARIAN ALDAN-PIERCE               ROY N. MORIOKA
    Chairperson                       General Manager
    Board of Directors



APPROVED AS TO FORM & LEGALITY:

_____
    MPLC Legal   Counsel

- 31 -

MARIANAS PUBLIC LAND CORPORATION
P.O. Box 380
Saipan, Northern Mariana Islands 96950

1
2
3
4                              **ACKNOWLEDGMENT**
5   COMMONWEALTH OF THE                )
                                       )  ss:
6   NORTHERN MARIANA ISLANDS           )
    _____)
7
8       On this 26 th day of September , 1990, before me
9   appeared, Roy N. Morioka, authorized representive, of Micronesia
    EDWARD T. TAKAHASHI (?)
10  Telecommunications Corporation, known to me to be the person
    whose  name  is  subscribed  to  the  foregoing  Indenture and
11  acknowledged  that he signed and delivered said Indenture as  his
    free and voluntary act for  the  purposes therein set forth.

12      In Witness Whereof,  I hereunto  set my hand and sealed this
13  26 th day of September , 1990.
14
15
16                                      _____
                                         Notary Public
17
                                       **JOAQUIN A. TENORIO**
18                              Commonwealth of the Northern Mariana Islands
                                    My Commission Expires on the
19                                   28 th day of Mar., 19 92
20
21
22
23
24
25
26

                            - 31 -

**MARIANAS PUBLIC LAND CORPORATION**
**P.O. Box 380**
**Saipan, Northern Mariana Islands 96950**

1

<u>ACKNOWLEDGMENT</u>

2

3
COMMONWEALTH OF THE NORTHERN )

4
　　　　　　　　　　　　　　　　 ) ss.
MARIANA ISLANDS　　　　　　　　 )

5
_____ )

6

7
　　　The foregoing instrument was acknowledged before me

8
this _21 st_ day of _September_ , 1990 by Marian Aldan-

9
Pierce, Chairperson Board of Directors, Marianas Public Land

10
Corporation, a Commonwealth of the Northern Mariana Islands

11
Corporation, on behalf of the Corporation.

12



13

14
　　　　　　　　　　　　　　　　Notary Public

15
　　　　　　　　　　　　　　**BERTHA T. CAMACHO**
　　　　　　　　　　　　　　　**Notary Public**

16
　　　　**Commonwealth of the Northern Mariana Islands**
　　　　　　**My Commission Expires on the**

17
　　　_6 th_ day of _February_ , 19 _91_

18

19

20

21

22

23

24

25

26