Colin M. Thompson, Esq.
Law Offices of Colin M. Thompson
J.E. Tenorio Building
PMB 917 Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile:  (670) 233-0776

*Attorney for Defendants*
*Micronesian Telecommunications Corporation and*
*Pacific Telecom, Inc.*

F I L E D
Clerk
District Court

FEB - 6 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **BOARD OF THE MARIANAS PUBLIC LAND AUTHORITY AND MARIANAS PUBLIC LAND AUTHORITY, for themselves and on behalf of the Northern Marianas Descent,** | ) CIVIL ACTION NO. 05-0034 <br> ) <br> ) <br> ) <br> ) **DEFENDANTS' OPPOSITION** |
| **Plaintiffs,** | ) **TO PLAINTIFFS' MOTION** <br> ) **TO REMAND** <br> ) |
| **MICRONESIAN TELECOMMUNICATIONS CORPORATION, PACIFIC TELECOM, INC., AND DOES 1-5,** | ) <br> ) **Hearing : February 16, 2006** <br> ) **Time    : 8:30 a.m.** <br> ) **Judge   : Alex R. Munson** |
| **Defendants.** | ) <br> ) |

        **COMES NOW**, Defendants, Micronesian Telecommunications Corporation ("MTC") and

Pacific Telecom, Inc. ("PTI") through their counsel of record, Colin M. Thompson, to oppose the

Motion for Remand filed by the  Board of the Marianas Public Land Authority ("Board") and

Marianas Public Land Authority ("MPLA" and collectively "Plaintiffs").  This opposition is based on

this memorandum and the record before the Court.  Defendants respectfully request that the Court

deny Plaintiffs' motion.

# **INTRODUCTION**

On November 2, 2005, pursuant to 28 U.S.C. § 1441, MTC and PTI filed a Notice of Removal with this Court. The Notice of Removal related to the Complaint filed in the Superior Court for the Northern Mariana Islands filed on October 3, 2005 by MPLA and the Board naming MTC and PTI defendants ("Complaint"). The Notice of Removal set forth the federal bases for jurisdiction. Specifically, the asserted federal jurisdiction included the Federal Telecommunications Act of 1996, P.L. 104-104, 110 Stat. 59 (1996), codified at 47 U.S.C. § 251, *et seq.* ("the Telecom Act") and the preemption of the Commonwealth Submerged Lands Act, 2 CMC § 1201, *et seq.*, as declared in *CNMI v. United States*, 399 F.3d 1057, 1066-67 (9th Cir. 2005).

The Notice of Removal provided in part:

- Plaintiffs seek termination and ejectment of MTC from MTC's right to sue the rights-of-way/easements given by the CNMI Government, under its telecommunication franchised agreement with MTC, in violation of a MTC's contractual relationship with the CNMI Government to serve as the CNMI local telephone exchange carries.

- Plaintiffs seek the remedy of leasehold termination and ejectment of MTC from previously-acquired leases/telecomcable rights-of-way/easements from various telecommunications network throughout the CNMI and from the MTC's remote switching stations located at: Susupe, Saipan; As Gonno Saipan; Garapan, Saipan; Kagman, Saipan, Tinian and, Sinapalu, Rota, the effect of which is granted would cause a CNMI wide cessation of telecom services and a barrier to MTC providing interstate and/or intrastate telecommunications services for the people of the CNMI.

- MTC is a duly franchised telecommunications local exchange carrier and subject to the provision of the Federal Telecommunications Act of 1996, P.L. 104-104, 110 Stat. 59

2

(1996), codified at 47 U.S.C. § 251, *et seq.,* and holds various rights-of-way/easements from the Government for its telecommunications cable used to transmit telecommunications data.

- Plaintiffs have also embarked on a course of conduct, which seek to impose lease easement requirements that are discriminatory and not on a competitively neutral, the effect of would amount to a regulatory scheme that would prohibit MTC from providing competitive-price telecommunications services in violation of 47 U.S.C. § 253, a law of the United States. Plaintiffs' actions pursuant to this are scheme are unlawful and are pre-empted by federal law.

- Plaintiffs' causes of action clearly disclose that they seek unfair and unreasonable compensation from MTC by signing rates which are not competitively neutral and are discriminatory. Such actions violate 47 U.S.C. § 253, a law of the United States. Plaintiffs' actions would ultimately prohibit MTC's ability to provide fair and competitive priced telecommunications services. They also are pre-empted by federal law.

- Plaintiffs seek divestment of MTC's right-of –way use under its a franchise agreement, purportedly modified by the CNMI's Fiber Optic Communications Facilitation and Competitive Telecommunications Act of 1996, 2 CMC § 1222(b), *et seq.*, which in turn is premised upon the purported jurisdictional authority of the Marine Sovereignty Act of 1980, 2 CMC § 1101, *et seq.*, and the Submerged Lands Act, 2 CMC § 1201, *et seq.*, each of which local laws was declared pre-empted by or in violation of federal law. See. in *CNMI v. United States*, 399 F.3d 1057, 1066-67 (9th Cir. 2005). Further Plaintiffs' assertion of authority over CNMI submerged lands, as defined in 2 CMC §

3

1213(k), in violates the Supremacy Clause of the United States Constitution and gives rise to a claim or right arising under the Constitution, treaties or laws of the United States, which claims or rights MTC may seek declaratory and/or injunctive relief to assert federal pre-emption. *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1994) (even in absence of explicit statutory provision establishing a cause of action, party may ordinarily seek declaratory and/or injunctive relief against state action on the basis of federal pre-emption).

The legal bases cited in the Notice of Removal are sufficient to establish federal jurisdiction. Nonetheless, on January 3, 2006, Plaintiffs filed the instant Motion for Remand. The sole basis for remand is lack of subject matter jurisdiction. Because federal subject jurisdiction is present in this action, Plaintiffs' motion should be denied.

## **AUTHORITY**

By Federal statute, civil actions may be removed from a state or Commonwealth Court to the Federal District Court.

> "...[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending....(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441.

4

The defendants do not challenge the procedure by which this case was removed. Instead Plaintiffs move to remand based on the assertion that this Court lacks subject matter jurisdiction. Once removed, the district court must remand a case any time it determines that it lacks jurisdiction over the removed action. 28 U.S.C. § 1447; see *ARCO Envtl. Remediation, LLC v. Dep't of Health and Envtl. Quality*, 213 F.3d 1108, 1113 (9th Cir. 2000). But, as shown below, because this case provides the basis for the assertion of federal jurisdiction, remand is not appropriate.

## A.    **The Well Plead Complaint Rule.**

In order to resolve the threshold issue of jurisdiction, the Court must first look to the Complaint and ascertain whether it comprehends a federal cause of action. *See* 28 U.S.C. § 1441(c). "In determining the presence or absence of federal jurisdiction, we apply the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 96 L. Ed. 2d 318, 107 S. Ct. 2425 (1987). The Ninth Circuit referred to this rule as "a fundamental tenet of federal jurisdiction". *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987). Under this doctrine: "Whether a case is one arising under the Constitution or a law or treaty of the United States . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant might interpose." *Taylor v. Anderson*, 234 U.S. 74, 75-76, 58 L. Ed. 1218, 34.S. Ct. 724 (1941). Plaintiffs argue that under the well-plead complaint rule, the case should be remanded because a federal question is not presented on the face of the complaint.

Thus the first point of analysis is to determine whether the face of the Complaint contains any allegations that would render a cause of action one that 'arises' under federal law. MPLA urges this

court to look no further than the titles of the causes of action asserted. MPLA asserts that not a single federal law is expressly mentioned in the complaint and that the claims are not federal claims. Defendants concedes that the complaint does not mention a federal statute or expressly assert a federal claim. However, the analysis only begins with the well-plead complaint rule; it does not end there. The Court must determine whether the case falls within an exception to the well-pleaded complaint rule, that of federal preemption or substantial federal question.

**B.    Complete Preemption**

The complete pre-emption doctrine is recognized by the Supreme Court as an independent corollary to the well-pleaded complaint rule. That is, "on occasion, ... the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar*, at 393. Thus, "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 934 (9th Cir. 1994). (citations omitted) Here, removal jurisdiction was proper under the complete preemption doctrine.

**Plaintiffs' sixteenth cause of action is completely preempted.** Plaintiffs cite in the first paragraph of the Complaint a statutory basis for their claims. "This court has jurisdiction over this matter pursuant to N.M.I. Const. Art. IV §2, 1, CMC §3202, and 2 CMC §1222- Fiber Optic Communications Facilitation and Competitive Telecommunications Act of 1996 ("Fiber Optic"). Complaint at ¶ 1. One of the cited statutes was preempted. As this Court ruled previously, the Submerged Lands Act, 2 CMC §§1201-1231 is preempted by federal law. "Simply put, the Commonwealth's Marine Sovereignty Act and Submerged Lands Act are preempted because the federal paramountcy doctrine (and any U.S. legislation enacted pursuant to the United States' paramount rights to waters seaward of the low-water mark) 'occupy the field' of legislation in this

geographical area." *Northern Mariana Islands v. United States*, No. 99-0028, 2003 WL 22997235, at *15 n.16 (D. N. Mar. I. Aug. 7, 2003) (order granting United States' motion for summary judgment and declaring 2 N.Mar.1. Code § 1101 *et seq.*, and 2 N.Mar.1. Code § 1201 *et. Seq.* preempted by federal law.) This Courts Ruling was affirmed by the Ninth Circuit Court of Appeals in N. Mariana Islands v. United States, 399 F.3d 1057, 1066-1067 (9th Cir. 2005).[1] The law cited by Plaintiffs as affording jurisdiction was within the statute preempted.

> The Commonwealth admits that its Submerged Lands Act, **2 N. Mar. I. Code §§ 1201 - 1231**, n10 and Marine Sovereignty Act of 1980, 2 N. Mar. I. Code §§ 1101 - 1143, n11 "combine to assert the Commonwealth's ownership of the submerged lands" in dispute. Because we hold that the United States has paramount rights to the submerged lands at issue here, [] a declaration of ownership (or sovereignty) over these submerged lands is directly contrary to federal law. See Texas, 339 U.S. at 719 ("This is an instance where property interests are so subordinated to the rights of sovereignty as to follow sovereignty."). The district court properly held that the Commonwealth's Submerged Lands Act and Marine Sovereignty Act of 1980 are preempted by federal law. Cf. Hines v. Davidowitz, 312 U.S. 52, 67, 85 L. Ed. 581, 61 S. Ct. 399 (1941) ("Our primary function is to determine whether . . . [state] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."). Id at 1066-1067.

The Plaintiff's Sixteenth cause of action is based entirely upon the pre-empted statute. Plaintiffs allege that "[d]efendant MTC has willfully and continually violated the conditions of its right-of-way set forth in Section 1222(b)(2) of the Fiber Optic Act up to about September 20, 2005." Complaint at ¶ 267.  Plaintiffs further allege by reason of Defendant MTC's failure to obey the conditions of Section 1222(b)(2) of the Fiber Optic Act, Plaintiffs were overcharged for each inter-island call made between Saipan, Rota, and Tinian from the time inter-island services were transmitted via Defendant MTC's fiber optic cable to September 20, 2005." Complaint at ¶ 268. Because the

---

[1]  We hold that the United States acquired paramount interest in the seaward submerged lands, as defined by the Supreme Court in California, found off the shores of the Commonwealth of the Northern Mariana Islands. Laws passed by the CNMI legislature to the contrary are inconsistent with the paramountcy doctrine and are preempted by federal law. The

Sixteenth cause of action is based on a statute pre-empted by federal law, directly implicating a federal interest, a federal question exists in this case and the cause is inappropriate for remand. Further, since the Court has jurisdiction over this claim, the Court may, in its discretion, exercise pendant jurisdiction over the remaining claims. According to *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966), pendent jurisdiction is appropriate whenever there is a federal claim of "substance sufficient to confer subject matter jurisdiction." Accordingly, based on the pre-emption of the Submerged Lands Act alone, this court has jurisdiction over the case at bar and the Motion to Remand should be denied.

## C.    <u>Substantial Federal Question</u>

Removal jurisdiction is also proper under the substantial federal question doctrine. "The vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 809, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986) (internal quotation omitted). However, federal question jurisdiction is also appropriate where "the vindication of a right under state law necessarily turns on some construction of federal law." Id. at 808-09 (quoting *Franchise Tax Bd.,* 463 U.S. at 9). …removal is only permitted under the substantial federal question doctrine if federal law is "in the forefront of the case and [is] not collateral, peripheral, or remote." *U.S. Express Lines,_LTD. v. Higgins,* 281 F.3d 383 at 389 (quoting *Merrell Dow,* 478 U.S. at 813). The Ninth Circuit referred to this doctrine as the "artful pleading doctrine". Under the artful pleading doctrine, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.,* 463 U.S. at 22; see also Sparta, 159 F.3d at 1212 ("A plaintiff may not avoid federal jurisdiction by

district court's grant of summary judgment for the United States is AFFIRMED. N. Mariana Islands v. United States, 399 F.3d 1057, 1066-1067 (9th Cir. 2005)

omitting from the complaint federal law essential to his or her claim or by casting in state terms a claim that can be made only under federal law."). The artful pleading doctrine allows courts to "delve beyond the face of the state court complaint and find federal question jurisdiction" by "recharacterizing a plaintiff's state-law claim as a federal claim." *Precision Pay Phones v. Qwest Communs. Corp.*, 210 F. Supp. 2d 1106, 1112, 1113 (N.D. Cal. 2002) (citing *Hunter v. United Van Lines,* 746 F.2d 635, 640 (9th Cir. 1985). *Lippitt v. Raymond James Fin. Serv*s., 340 F.3d 1033, 1041 (9th Cir. 2003). Furthermore, the Ninth Circuit Court recognized that the decision in *Caterpillar*, does not prohibit federal courts from examining the substance and remedies sought in the complaint. See *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998).

Upon closer inspection the Complaint amounts to an artfully drafted pleading that sidesteps reference to the unavoidable federal issues.     In fact, the Complaint seeks to terminate the telecommunication's systems of the Commonwealth by evicting it from rights of way or by imposing financial burdens that go far beyond those allowed under federal law.  As explained more fully below, the Telecom Act greatly limits the authority of local governments to impose legal requirements on telecommunications companies like MTC and PTI. Pleading Commonwealth and common law causes of action does not eliminate the federal law requirements of the Telecom Act simply because they are not mentioned in the Complaint.

> Under the artful pleading doctrine, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." Franchise Tax Bd., 463 U.S. at 22; "A plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state terms a claim that can be made only under federal law." *Sparta,* 159 F.3d at 1212.

Because the Telecom Act pre-empts local authority to regulate telecommunications companies except within narrowly proscribed areas, Plaintiffs must ultimately establish that the remedies they seek do not run contrary to the requirements of the Telecom Act.

> Since its first articulation in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 673, 94 L. Ed. 1194, 70 S. Ct. 876 (1950), courts have used the artful pleading doctrine in: (1) complete preemption cases, see *Metropolitan Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-65, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987) and (2) substantial federal question cases, see Franchise Tax Bd., 463 U.S. at 27-28. n5 Subsumed within this second category are those cases where the claim is necessarily federal in character, see *Brennan v. Southwest Airlines Co.*, 134 F.3d 1405 at 1409, **or where the right to relief depends on the resolution of a substantial, disputed federal question**, see *Merrell Dow*, 478 U.S. at 814. *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1041-1042 (9th Cir. 2003) (Emphasis added)

Here, the conduct alleged in the Complaint exclusively relates to MTC provision of telecom service. For example Plaintiffs seek monetary damage for alleged telecommunications fees charged allegedly in violation of 2 CMC § 1222. Not only is this cause of action based on a statute that is pre-empted by federal law but the substance of the claim is of federal character because of the dictates of the Telecom Act. Secondly, MPLA's claims for ejectment and unjust enrichment are more properly viewed as claims for relief under 253(c) of the Telecom Act because any right to relief must fall within the narrowly proscribed boundaries of that safe harbor provision. A quick survey of the Prayer for Relief in the Complaint demonstrates that the right to the relief sought will depend on the resolution of issues embodied in the Telecom Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

…

(b) Punitive damages in an amount appropriate to punish Defendant and set an example to others;

(c) Termination of the As Gonno Lease, Garapan Lease, Kagman Lease, and Sinapalu Lease;

(d) Ejectment of Defendants from the As  Gonno Premises, Garapan Premises, Kagman Premises, and Sinapalu Premises;

(e) Ejectment of Defendants from the public lands easements if Defendants continue to refuse to pay for the of the Northern Marianas Descent public lands despite making millions of dollars from the use of the Northern Marianas Descent public lands;...

(g) An award of restitution to Plaintiffs for the use of the valuable Northern Marianas Descent public lands easement so that Defendants will not be unjustly enriched at the expense of the Plaintiffs and the Northern Marians Descent....

(i)  A return to Plaintiffs of all charges wrongfully collected for inter-island calls from  the time Defendant MTC began providing services over the fiber optic cables until September 20, 2005.

The remedies prayed for by the Plaintiffs raise substantial federal questions.  Since eviction from land where MTC operates its telecommunications service and/or rights of way wheter the network of telephone cables lie mean cessation of telecommunications service in the Commonwealth, Section 253(a) of the Telecom Act would be violated. To the extent that remedies sought exceed the allowed regulation of Section 253(c) of the Telecom Act, they are pre-empted.  Thus, the state court causes of action are impermissible and federal jurisdiction is implicated.  "A careful reading of artful pleading cases shows that no specific recipe exists for a court to alchemize a state claim into a federal claim -- a court must look at a complex group of factors in any particular case to decide whether a state claim actually 'arises' under federal law." Cal. ex rel. *Lockyer v. Dynegy, Inc.*, 2004 U.S. App. LEXIS 22531, 21-22 (9th Cir. 2004).   The Complaint contains fifty (50) pages of text with attachments exceeding one hundred and fifty (150) pages.  Among these pages is a complexity of allegations that distill into the attempt to regulate the Commonwealth's telecommunications company.   This Complaint is artfully pleaded, but it raises substantial federal issues that afford this Court jurisdiction.

1       Plaintiffs' right to relief from the causes of action alleged depends on a determination that such

2  relief will not violate the Telecom Act[2].  The Act prohibits state and local governments from creating

3  "barriers to entry," legal requirements that prohibit or have the effect of prohibiting a company from

4  providing telecommunication service. 47 U.S.C. § 253.  Section 253 broadly prohibits state and local

5  regulation of telecommunication 253 (c) provides a narrow exception or "safe harbor" for limited local

6  regulation allowing local government to manage and collect fees for the use of public rights-of-way by

7  telecommunication providers under certain proscribed conditions.

9       Section 253 of the Act,[3] entitled "Removal of barriers to entry," provides
in pertinent part:
        (a)    In general
No State or local statute or regulation, or other State or local legal
requirement, may prohibit or have the effect of prohibiting the ability of
any entity to provide any interstate or intrastate telecommunications
service.
        (b)    State regulatory authority
Nothing in this section shall affect the ability of a State to impose, on a
competitively neutral basis and consistent with § 254 of this title,
requirements necessary to preserve and advance universal service,
protect the public safety and welfare, ensure the continued quality of
telecommunications services, and safeguard the rights of consumers.
        (c) State and local government authority

Nothing in this section affects the authority of a State or local
government to manage the public rights-of-way or to require fair and
reasonable compensation from telecommunications providers, on a
competitively neutral and nondiscriminatory basis, for use of public

---

[2]  The full title of the Act is "An Act to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." The conference committee report noted that the purpose of the statute is to provide for a "procompetitive, deregulatory national policy framework." H.R. Rep. No. 104-458 (1996). *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1170 N. 5 (9th Cir. 2001)

[3]  U.S. territories and possessions are: Puerto Rico, the U.S. Virgin Islands, Guam, the Northern Marianas, American Samoa, Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, the Midway Atoll, Navassa Island, the Palmyra Atoll, and Wake Island. As U.S. territories and possessions, they fall within the definition of "state" in the Communications Act of 1934, as amended,...11 FCC Rcd 9564, 9590 (FCC 1996)

rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

As explained,

"Section 253(a) bars all state and local regulations that "prohibit or have the effect of prohibiting" any company's ability to provide telecommunications services unless the regulations fall within the statute's "safe harbor" provisions (of which only § 253(c), related to local regulation of rights-of-way, is relevant here). The preemption is virtually absolute and its purpose is clear - certain aspects of telecommunications regulation are uniquely the province of the federal government and Congress has narrowly circumscribed the role of state and local governments in this arena. "Municipalities therefore have a very limited and proscribed role in the regulation of telecommunications." *AT&T Communications v. City of Dallas*, 8 F. Supp. 2d 582, 591 (N. D. Tex. 1998).

Section 253(a) preempts "regulations that not only 'prohibit' outright the ability of any entity to provide telecommunications services, but also those that 'may . . . have the effect of prohibiting' the provision of such services." *Bell Atl. v. Prince George's County*, 49 F. Supp. 2d 805, 814 (D. Md. 1999), vacated and remanded on other grounds, 212 F.3d 863 (4th Cir. 2000). A number of courts have held that certain requirements imposed by local ordinances constitute a prohibition within the meaning of § 253(a). For example, an onerous application process, *Bell Atl.*, 49 F. Supp. 2d at 814 ("Any 'process for entry' that imposes burdensome requirements on telecommunications companies and vests significant discretion in local governmental decision makers to grant or deny permission to use the public rights-of-way 'may . . . have the effect of prohibiting' the provision of telecommunications services in violation of the [Act]."); a requirement to obtain a franchise, see *AT&T Communications v. City of Dallas*, 52 F. Supp. 2d 763, 770 (N.D. Tex. 1999) (a representation by the city that "without a new franchise . . . AT&T may not offer [services]" is "sufficient proof of the requisite prohibitive effect that triggers the preemptive force of § 253(a)."), vacated and remanded on other grounds, 243 F.3d 928, 2001 WL 197926 (5th Cir. Mar. 15, 2001); threat of penalties for failure to obtain a franchise, *AT&T Communications v. City of Austin*, 975 F. Supp. 928, 939 (W.D. Tex. 1997) ("The threat of criminal sanctions and fines for the failure of an entity to obtain municipal consent can indubitably only be described as a prohibition."); or a combination of these factors, *TCG New York, Inc. v. City of White Plains*, 125 F. Supp. 2d 81 (S.D.N.Y.

2000) (regulations coupled with long approval process are a prohibition), may constitute a prohibitive effect. Taken together, these cases persuasively indicate that a regulatory structure that allows a city to bar a telecommunications provider from operating in the city "prohibits or has the effect of prohibiting" the company's ability to provide telecommunications services under 47 U.S.C. § 253(a). *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1175-1176 (9th Cir. 2001)

To explore one example of the depth of regulation which the Plaintiffs attempt to impose on MTC through this lawsuit, we need only look to the allegations of paragraph 178 of the Complaint.   Paragraph 178 provides:

Defendant MTC breached the Sinapalu Lease with Plaintiffs in the following respect:

    a.    Defendant MTC refused to cooperate and failed to submit to MPLA copies of certified financial statements since the inception of the Sinapalu Lease, pursuant to Article 7 of the Sinapalu Lease; notwithstanding demand for financial documents and information, Defendant MTC has failed, neglected, and refused, and still fails, neglects, and refuses to provide the demanded financial documents and information.

    b.    Defendant MTC failed to submit an appraisal report for June 22, 2002,pursuant to Article 6 of the Sinapalu Lease;

    c.    Defendant MTC failed to submit to MPLA executed copies of plat or diagram showing the true location of the utility lines to be constructed on the Sinapalu Premises, pursuant to Article 15 of the Sinapalu Lease;

    d.    Defendant MTC failed to submit to MPLA a copy of valid fire and damage insurance policies, with extended coverage endorsements, jointly in the names of MTC and MPLA as named co-insured, pursuant to Article 18 of the Sinapalu Lease;

    e.    Defendant MTC failed to submit to MPLA a copy of valid liability insurance policy, in a minimum coverage amount, pursuant to Article 20 of the Sinapalu Lease;

    f.    Defendant MTC failed to submit copies of permit, construction plans, specifications, and estimates for the construction of the structures on the Sinapalu Premises, pursuant to Article 8 of the Sinapalu Lease.

    g.    Defendant MTC failed to obtain Plaintiffs; written consent to assign the Sinapalu: Lease pursuant to Article 12 of the Sinapalu Lease;

    h.    Defendant MTC failed to pay the assignment fee of twenty-five percent (25%) of the capital gain attributable to the Sinapalu Premises pursuant to Article 12 of the Sinapalau Lease.

Here, the Plaintiffs seek copies of financial statements, appraisal reports, plat or diagrams of utility lines, copies of insurance policies, permits, construction plans, consent for the sale of shares of stock and twenty five percent of the capital gain.  If the Court was not convinced of the important and substantial federal issues raised by the remedies prayed for in the Complaint, the substantive allegations should provide sufficient support. The allegations taken together prohibit or have the effect of prohibiting MTC's ability to provide telecommunications service.  In order for Plaintiffs to lawfully obtain the remedies sought, they must conform to section 253(c) of the Telecom Act.  The Telecom Act creates substantial federal rights that are implicated by the allegations of the Complaint and therefore confers this court with subject matter jurisdiction.  Accordingly, Plaintiffs' motion should be denied.

## CONCLUSION

Based on the foregoing, Defendants respectfully request the Court to deny Plaintiffs' Motion to Remand.

Dated this 6th day of January, 2006.

_____
**COLIN M. THOMPSON, ESQ.**
Attorney for Defendants,
Micronesian Telecommunication Corporation and
Pacific Telecom, Inc.